Number 151692, United States v. Jervis, Hillaire.  Good morning. May it please the court. I'm Jim Hughes and I represent Jervis, Hillaire. Today I want to focus on three issues. One, my client standing to contest the Fourth Amendment issues as a passenger. Secondly, the canine search and third, the search of the magnetic strip of my client's credit cards. And just so the court knows, there were three stops here, but I'm only concerned with the one in Ohio, October 2nd, 2013. With respect to the standing argument, although my client was a passenger, I submit he had standing to contest the Fourth Amendment issues. Pursuant to Bramlin v. California, and as this court has held in U.S. v. Almeida, Sindovich, Starks, and others, and the factors to consider that are laid out on page 47 of Almeida, and I would want to go into some of them now. Number one, my client exhibited a subjective expectation of privacy when he placed the credit cards they found on my... Excuse me, how do we know he's the one who placed them there? And I thought Almeida says directly to the contrary. As a general matter, one who is merely a passenger does not have a reasonable expectation of privacy in a vehicle. He is not the owner, he doesn't exercise control, he wasn't the driver, he isn't listed on the rental agreement. How is any expectation of privacy in those hidden credit cards objectively reasonable? Well, my understanding of Almeida is that there were a number of factors, such as the totality of the surrounding circumstances, ownership, possession, and control. Do any of those work in your client's favor? One of them is the existence or non-existence of a subjective anticipation of privacy, and U.S. v. Rule held that a subjective expectation of privacy exists when a person, the defendant has contraband. But I would also add that my client had a possessory interest in the case. They had his name on it. These weren't just impersonal, fungible drugs or cash that we see in Almeida, or a tire sealant that we see in Simnovich, or drugs in Campbell. But his name was on it. I'm sorry, his name is on each one of these phony credit cards? That's correct, Your Honor. Okay. So that's the linkage you're making. That's correct. He never testifies, though. That is correct, Your Honor. He never denied that those were his, like some other cases have. He never said they were his. Yes. I think there's a reasonable inference that his name is on it, that it's his. I'm confused. You seem to be saying that the privacy inheres in the thing found rather than in the vehicle. I would have thought that the thing being searched is the vehicle, and then what's found are the cards. Yes. So what is his privacy expectation in the vehicle? Well, in the vehicle, as a passenger, I'm arguing that he has one based on these factors in Almeida. I know, but the thing that you seem to be circumventing is the thing found. Yes. That seems, sometimes we say bootstrapping, something like that. Yes, Your Honor. I suppose it could be said of that. Yes, Your Honor. But the other factor that I would like to raise is the last sentence of that paragraph in page 47 of Almeida where it goes into the factors. It says, we look in short to whether or not the individual thought of the place or article as a private one and treated it as such. So that's my argument, my issue number one, Your Honor. The second issue is the canine search of the vehicle. Rodriguez v. USA was decided in 2015, and since the canine search occurred after the initial citation, that case would be implicated here. So the issue is, was there a reasonable articulal suspicion of criminal activity to justify detaining the defendant beyond completion of the traffic investigation? I submit there was. The most telling argument, I believe, is this. Police officer Trooper Martin testified on page 146 of the joint appendix. It's the question, you didn't have anything solid. Answer, I had my observation. Question, you had a hunch. Answer, yes. So he's admitting that he had a hunch, and we know that reasonable articulal suspicion requires more than a hunch. Another aspect, I throw in about six other parts where I assert that there wasn't enough reasonable articulal suspicion, such as the clean car. I'd go back to Judge Barron's question. We have a case called Simonovitch in which we held that a relevant inquiry is whether the passenger had a reasonable expectation of privacy in the place where the item was found, not in the item itself. So we seem to have rejected a principal pillar of your argument. Well, that's why on page 47 of Almeda, it seems to say, at least in the last sentence, and perhaps I have this wrong here, but it says that we look in short to whether or not the individual thought of the place, parenthesis, or article as a private one and treat it as such. So that's why I'm arguing that, Your Honor, but I understand perhaps there's a different perspective here. Other aspects on the reasonable articulal suspicion was mentioned. The car was clean. There were no visible luggage. Well, can I just go back? In Almeda was the, I forget the facts, was something found inside a case in Almeda? In Almeda, there were drugs and cash found. And I'm trying to think also. I'm just wondering whether the article being referred to there is the cash or drugs or whether it was a item in the, that was holding. I don't actually recall the specifics. I think it was counterfeit obligations. Since he was after a canine sniff and they found a small bag. Yes. So the bag could be the article. Yes. But the other indicia that is used to justify reasonable articulable suspicions, such as the clean car, I don't believe is meritorious. Criminal history. Ronda Hall had no criminal history. Mr. Hilaire had some but no drug citations. One justification was the fact that they came from New York to Ohio. Millions of people come from New York to Ohio. And there are other aspects that I mentioned in my brief on that issue. The third and final issue that I have here is the search of the magnetic strips. We know that Riley versus California held a search for cell phone implicated the Fourth Amendment. And what I'm suggesting here is that the magnetic strip of the credit card is analogous. Now I recognize that one of the big reasons for Riley was the amount of information on the cell phone. And I recognize a magnetic strip does not have that type of information. It's very limited. But to me the issue is not quantity but quality. The type of information on a credit card strip I submit should be worthy of a reasonable expectation of privacy. So since there was no expert testimony as to what information is on the strip, what are you asking us to do? I think you can take judicial notice of other opinions, perhaps in the Fifth Circuit in Baugh or Delisle. But that is a very good point, Ronda. That's true. So the other aspect is that we have no idea what was on the strip. That's true. And I know it's the burden of my client to bring an expert witness with that respect. Other circuits have ruled on this and they mentioned, for example, the first line is the account number. The second line is the credit card holders. But nobody would want their credit card information, nobody in this courtroom, made public. And even if we don't know exactly what's on it. So if there's no other questions, that's all I have. Thank you very much. Thank you. Good morning, Your Honors. I please the Court, Renee Bunker, on behalf of the United States. I, too, will start with a threshold issue, which is standing in this case. And I would point out that Brennan, the case that the appellant relies on heavily, there the challenge was only, the Supreme Court made clear, only to the seizure of Brennan himself. He explicitly was not challenging the search, which is an important distinction. As Judge Lynch and Judge Barron have highlighted, cases such as Almeda and the item found in the car there, Almeda was actually, at one point, a driver, and then they switched, and then he was a passenger, so he was a little of both. The items, the counterfeit cash and drugs, were found in a Doritos bag in the passenger compartment. Simonovic, the passenger was in the front seat, and the Court found, notwithstanding his, assumed for the sake of argument that he had a possessory interest in that fix-a-flat can, notwithstanding whatever possessory interest he might have had in the drugs inside the fix-a-flat can, when he put it underneath the passenger seat, where he had no reasonable expectation of privacy, he, notwithstanding to challenge the search of the vehicle. Campbell is another good example where this Court, that was a credit card access device case as well. Cards were seized from the glove box, and the trunk, I believe, Mr. Campbell, was a rear seat passenger in the car, and the Court held that he, too, notwithstanding to challenge the search of the vehicle. So, if he lacks standing, can he pursue the other two arguments he's presented to us this morning, the dog search and the credit card search of the magnetic strip? He could pursue them, but our position is they would go nowhere from that threshold issue. He could pursue the consent, I think the consent in his own statements, he could pursue, but he's not pursuing his own statements anymore on appeal. No, if the defendant fails to meet his burden at that very threshold level, this circuit's case law is clear from Siminovich, Almeida, Campbell, Locon, Sanchez. He cannot challenge the search of the vehicle, or in this case, we submit the cards, which were secreted either by Mr. Haller or somebody else, we don't really know who, underneath the cover to the spare tire in the trunk, certainly a location where Haller has failed to meet his burden of establishing a reasonable expectation of privacy in this, what proved to be a rental car. So, with that, unless the Court has further questions. I just thought, I wanted to make sure I fully understand, suppose it had been his cell phone that was found in the car, your position then would be he had no standing to challenge a search of his cell phone at that moment? I think it would depend on the cell phone and his person, absolutely. No, same facts, it's just instead of it's a credit card, it's the cell phone and Riley. But it's his, it's the defendant's. Your position is because he lacked reasonable expectation of, he has no standing to challenge the search, anything found pursuant to that search, even if it's obviously his, he has no standing to challenge a further search of it? I think it might turn on the facts of the case in terms of... Well, that's the facts of the case. Well, it's the... If you find the car... If he somehow did his cell phone underneath the spare tire cover in the trunk... No, the same facts as this case. Instead of the credit cards, which you say he had no expectation of privacy where they were stored, instead of finding a credit card, they found his cell phone. They know it's his cell phone. Can they then search that cell phone without him having any standing to challenge that search? I think under the, just the black letter law, the Amito, Simonovic, Campbell, et cetera, there is an argument that he does not, but those facts are, I just think that goes beyond what we're talking about here.  whether the search of the credit card is like a search of a cell phone. That's all I'm asking. The answer would be, you would say, no, it's not. It's absolutely not. I disagree with the magnetic strip argument. It's nothing at all like a cell phone. These are counterfeit cards, again, secreted in the trunk, at which point we would also maintain that it's public property. This question is whether we have to reach that issue. I'm just trying to find out whether we do. I don't think the court does. Well, on the cell phone issue, no. I think Mr. Hilaire failed to establish that he has a reasonable expectation of private, virtually every factor that this court has identified. For the court to consider setting aside Kennedy or in the Breitling rule, every factor cuts against him. Ms. Bunker, the suggestion being made is that it might be wiser for us to reach the magnetic strip question in order not to have any implications for cell phones that are found somewhere in a car where you would not expect it, but it is the passenger's cell phone. Right. Well, so right is different from your first answer. Well, maybe I didn't understand, Judge Behrens, where you're going with that question, but there are absolutely, in our view, and I think the case law supports it, distinctions between these credit cards bundled with a rubber band and the implications of a cell phone as discussed in Riley and all of the private personal information, and even the purpose of the magnetic strips as the cases we highlight is to provide third parties with that information, which is also exactly what should be embossed on the front of the cards as the cases we highlight. So, yes, I think that there is arguably a very large distinction between the contents of a cell phone and these odd Visa cards sitting underneath the spare tire cover. And unless the court has further... I have a question. If the credit cards had belonged to the driver, who obviously wouldn't have a standing problem, would you be arguing that this was a justifiable search? Not a justifiable search? Yes, all along we think it's a justifiable search based on reasonable suspicion and then the canine alert, the gate problem caught. What was the reasonable suspicion? In Ohio, Trooper Martin, when he approached Randall and asked for a license and registration, Trooper Martin saw Randall reach for that center console and then the plastic baggie that contained something and he saw Randall quickly close the center console. And then he goes back to the car, radios for the canine, he radios immediately for dispatch, he needs more information, the social security numbers in order to get a more thorough background check on the passengers from California, the drivers from New York, they're headed to Ohio, Randall comes back to the car and he has, as the district court pointed out, then there are these odd things going on with the rental agreements. The car expires the next day in the middle of what Randall reported was going to be a two or three day trip touring Columbus to maybe check out jobs. Randall's sort of corresponding volunteering information about his job search. I'm just having trouble trying to figure out where the limit is. Anything seems to me to create suspicion. I heard a similar comment in the prior case, Judge Thompson, and I think the court, I guess two comments, and my opponent in one of these cases, besides a case where the officer cited the window dressing, the car had a lot of stuff in it. How can a car be too clean? Well, I think an officer, so before I answer that question, I think the court has repeatedly pointed out that the context matters and there's a reason we don't balkanize the facts and look in isolation. It matters whether you're on a long trip. Why? Well, there's some deference owed to the experienced officer who frequently sees people on long trips and there are bags of chips or Doritos bags or some sort of personal effects. Of course, these are two adults and not kids with them. I empty my trash whenever I go to a rest stop. Well, again, I think it's context, and two adults, even a defense counsel, repeatedly said couldn't that bag have contained chips, cookies, snacks? I mean, that's exactly where a defense counsel was going in a cross-examination about that bag. Wouldn't it be ordinary for these folks to have some food along the way on a trip from New York to Ohio? And I think, again, context matters because that other case that… Because the passable food bag was in the console as opposed to the floor, that's suspicious. No, no, no. It was the way that Randall Hall quickly shut the center console that Trooper Martin found very suspicious. He saw a plastic bag which might have contained tobacco, in fact, it proved to contain tobacco, but it was the way that the furtive… Based on the officer's training experience, he saw this quick closing of the console in response to… Well, when he was searching for the license and registration, which I think weighed heavily in the officer's… So from your point of view, whether the car was clean or had chips bags in it, in the end, is not relevant to the conclusion the officer drew? No, that was one of several factors that the officer highlighted. Thank you, Your Honor. Thank you. We'll ask that you refrain. Can I ask you one quick thing? Do we know what information was removed from the strip? Yes. Some of the… My recollection, maybe Renee can… Some of the numbers, I think, corresponded with the ones on the card and the strip. I think the first seven did, but there were 17 in all. And then others did not correspond, and I think others were blank. So there were three different sets of credit cards. But there was no information like any of the purchases made? You couldn't tell anything other than some numbers that… Right. Didn't mean anything or match the numbers on the card? Right. And the Fifth Circuit and Baugh or Delisle, they seem to go into detail on… They mentioned that one top strip is probably the name, second strip, number, third strip could be frequent flyer or other identifier. That was my recollection. But the reason the government's interested in what's on the magnetic strip is it showed that most of those cards were counterfeit. Was that the point?  Okay. Yes. Thank you. I can just give you a citation. The record citation is the Joint Appendix at pages 217 and 218 is where Trooper Wells was talking about the results of the strips, which he got shut down because of defense counsel's objections, but that's where it is in the record. Okay. And then there was six minutes from the reasonable, articulable suspicion from the… Don't abuse your privilege, counsel. Okay, thank you. Thank you.